## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| RUDOLPH TECHNOLOGIES, INC., DAVID | : **SECURITIES EXCHANGE ACT OF** |
| B. MILLER, JEFFREY A. AUKERMAN, | : **1934** |
| LEO BERLINGHIERI, DANIEL H. BERRY, | : |
| VITA CASSESE, THOMAS G. GRIEG, III, | : **JURY TRIAL DEMANDED** |
| MICHAEL P. PLISINSKI, and JOHN R. | : |
| WHITTEN, | : |
| | : |
| Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Rudolph Technologies, Inc. ("Rudolph or the "Company") and the members Rudolph's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Rudolph and Nanometrics Incorporated ("Nanometrics").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on August 15, 2019 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby PV Equipment Inc. ("Merger Sub"), a wholly owned subsidiary of Nanometrics, will merge with and into Rudolph with Rudolph surviving the merger and becoming a wholly owned subsidiary of Nanometrics (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Rudolph common share issued and outstanding will be converted into the right to receive 0.8042 of a share of Nanometrics common stock and cash in lieu of any fractional shares of Nanometrics common stock any former holder of Rudolph common stock would otherwise be entitled to receive (the "Merger Consideration").

3.   As discussed below, Defendants have asked Rudolph's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley"), in conducting the valuation analyses in support of the fairness opinion. The Registration Statement also omits or misrepresents information regarding background of the Proposed Transaction.

4.   It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Rudolph's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Rudolph in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Rudolph common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant David B. Miller ("Miller") has served as a member of the Board since July 2015, and as the Company's non-executive Chairman since August 2018.

11. Individual Defendant Jeffrey A. Aukerman ("Aukerman") has served as a member of the Board since December 2014.

12. Individual Defendant Leo Berlinghieri ("Berlinghieri") has served as a member of the Board since September 2008.

13. Individual Defendant Daniel H. Berry ("Berry") has served as a member of the Board since October 1998.

14. Individual Defendant Vita Cassese ("Cassese") has served as a member of the Board since July 2018.

15. Individual Defendant Thomas G. Grieg, III ("Grieg") has served as a member of the Board since January 2003.

16. Individual Defendant Michael P. Plisinski (Plisinski") is currently the Company's Chief Executive Officer and has served as a member of the Board since November 2015.

17. Individual Defendant John R. Whitten ("Whitten") has served as a member of the Board since July 2006.

18. Defendant Rudolph is incorporated in Delaware and maintains its principal offices at 16 Jonspin Road, Wilmington, Massachusetts 01887. The Company's common stock trades on the New York Stock Exchange under the symbol "RTEC."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>**The Proposed Transaction**</u>

21. Rudolph, designs, develops, manufactures, and supports process control defect inspection and metrology, advanced packaging lithography, and process control software systems used by microelectronic device manufacturers. It offers process and yield management solutions

used in bare silicon wafer production and processing facilities, and device packaging and test facilities through standalone systems for macro-defect inspection, packaging lithography, probe card test and analysis, and transparent and opaque thin film measurements. The Company also provides spare parts and software licensing services. It markets and sells its products to analog, logic, memory, radio frequency, complimentary metaloxide semiconductor image sensors, microelectromechanical systems, and flat panel display manufacturers in the United States, Taiwan, South Korea, Singapore, Austria, Japan, Germany, and China, as well as other European and Asian countries. The Company was formerly known as Rudolph Research Corporation. Rudolph was founded in 1940 and is headquartered in Wilmington, Massachusetts.

22. On June 24, 2019, the Company and Nanometrics jointly announced the Proposed Transaction:

> MILPITAS, Calif. and WILMINGTON, Mass. – June 24, 2019 – Nanometrics Incorporated (NASDAQ: NANO), a leading provider of advanced process control metrology and software analytics, and Rudolph Technologies, Inc. (NYSE: RTEC), a leading provider of semiconductor process control systems, lithography equipment, and software for wafer fabs and advanced packaging facilities, today announced that they have agreed to combine in an all-stock merger of equals transaction. The merged company will be a premier end-to-end metrology, inspection, process control software, and lithography equipment provider for the semiconductor industry and other advanced markets.
>
> Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Rudolph stockholders will receive 0.8042 shares of Nanometrics common stock for each Rudolph share. Upon completion of the merger, current Nanometrics stockholders will own approximately 50% and current Rudolph stockholders will own approximately 50% of the combined company.
>
> Rudolph CEO Michael Plisinski will serve as Chief Executive Officer and Rudolph CFO Steven Roth will serve as Chief Financial Officer of the combined company, alongside a highly experienced leadership team comprised of executives from both companies. The

Board of Directors will be led by Nanometrics director Christopher Seams and will have 12 directors, consisting of six from each existing Board. The combined company will be headquartered in Wilmington, Massachusetts and will maintain a strong presence at Nanometrics' headquarters in Milpitas, California.

\* \* \*

**Key Strategic and Financial Benefits**

The merger joins together two highly complementary, leading semiconductor inspection and metrology companies. Investors, customers, employees and all constituents are expected to benefit from:

- Complementary Products: Nanometrics and Rudolph have highly complementary portfolios.  By bringing together front-end metrology with inspection solutions, the new company will have the opportunity to offer more comprehensive process control solutions to the world's leading semiconductor device manufacturers.  These served markets are also complementary, as the combined product portfolio provides tools and software to customers producing advanced nodes and specialty devices in the front-end along with advanced packaging in the back-end. As customers continue to invest in more advanced process control solutions, the combined technology portfolio and established channels to these markets is expected to accelerate the ability to serve both front-end and back-end markets.
- Increases Served Markets: Each company currently has a semiconductor industry SAM of at least $1B, with additional SAM expansion opportunities of $400M to $500M per company.  The combination is expected to expand the companies' served market opportunity to approximately $3B.  With each company's capabilities in their respective served markets, the combination is expected to strengthen the combined team's opportunity to grow their share of the combined SAM and invest in future expansions.
- Global Scale: The combined company will have broader, global scale enabling it to better invest, compete, and provide innovative services to the customer base. The combined company will have worldwide locations and facilities across the U.S., China, Europe, Japan, South Korea, Singapore and Taiwan, including a strong combined team worldwide.  Nanometrics and Rudolph had in the aggregate approximately $600 million in revenue and $118

- million in operating income based on 2018 results. In addition, at the end of the first calendar quarter, the companies had in the aggregate cash and marketable securities totaling $319 million, working capital of $526 million and no debt.
- **Strong Cash Generation:** In 2017 and 2018 the companies generated a combined $223 million in cash flows from operating activities. The combination is expected to enhance the free cash flow generation of the combined enterprise, resulting in a stronger cash position to enable strategic capital deployment in order to further increase shareholder value.
- **Increased Shareholder Value:** The combined company is expected to drive long-term shareholder value through cost synergies and revenue growth opportunities. Annual cost synergies of at least $20 million are expected, primarily from elimination of duplicate public company costs, elimination of redundant facility leases, and other general administration areas. The companies expect additional potential upside from revenue synergies through cross-selling and software modules.

**Timing and Approvals**

The transaction is expected to close in the second half of 2019, subject to the completion of customary closing conditions, including receipt of regulatory approvals, and approval by the stockholders of each company.

**Advisors**

Barclays is serving as exclusive financial advisor to Nanometrics and Cooley LLP is serving as legal counsel. Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Rudolph and WilmerHale LLP is serving as legal counsel.

* * *

23. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Rudolph's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

24.     On August 15, 2019, Rudolph and Nanometrics jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

25.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

26.     For the projections for Rudolph, including the Initial Management Projections and Updated Management Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted Gross Profit, (2) Adjusted Operating Income, (3) Adjusted EBITDA, (4) Adjusted Net Income, and (5) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement 127.

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory

mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

30. With respect to the *Public Trading Comparables Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by Morgan Stanley in its analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31. With respect to the *Relative Discounted Cash Flow Analysis* for Rudolph, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the range of perpetual growth rates ranging from 1.0% to 3.0%; (ii) the inputs and assumptions underlying the discount rates ranging from 8.6% to 9.6%; (iii) the net cash as of June 30, 2019; and (iv) the terminal values of the Company at the end of the forecast period (second half of CY 2019 and CYs 2020 through 2028). Registration Statement at 117.

32. With respect to the *Exchange Ratio Implied by Discounted Cash Flow Analysis* for Rudolph, the Registration Statement fails to disclose the fully diluted shares outstanding as of June 20, 2019, as provided by the Company and Nanometrics.

33. With respect to the *Background of the Merger*, the Registration Statement fails to disclose information concerning when defendant Plisinski was considered to become the CEO of the newly-formed company, and when defendants Aukerman, Berlinghieri, Cassese, Miller, Plisinski, and Whitten were being considered to be on the board of the newly-formed company.

34. This information is vital to Rudolph's stockholders so that they may understand the conflicts of interest facing management and the Board. The timing and nature of post-close employment provides key insight concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. If the Board negotiated for their own interests ahead of stockholder compensation, stockholders would certainly find such information material.

35. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.    Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.    The Individual Defendants acted as controlling persons of Rudolph within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Rudolph, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Rudolph, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Rudolph, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 20, 2019

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*